UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **ORION REFINING CORPORATION** | **03-11483** |
| DEBTOR | USBC DISTRICT OF DELAWARE |
| | |
| **ORION REFINING CORPORATION** | ADV. NUMBER |
| PLAINTIFF | **03-1119** |
| V. | |
| **THE DEPT. OF REVENUE, STATE OF LOUISIANA, BY AND THROUGH CYNTHIA BRIDGES, IN HER CAPACITY AS SECRETARY** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Orion Refining Corporation ("Orion") sued the Louisiana Department of Revenue ("LDR") in the 19th Judicial District Court on November 25, 2002. Its petition sought a declaratory judgment concerning the ownership of state tax rebates Orion claims it acquired from TransAmerican Refining Corporation ("TARC") in 1998. On May 13, 2003, Orion filed chapter 11 in the United States Bankruptcy Court for the District of Delaware. It removed the Louisiana state court action to the United States District Court for the Middle District of Louisiana, which referred the matter, including LDR's Motion

to Abstain and Remand, to this Court. The Court took up LDR's Motion to Abstain and Remand, and the Motion to Dismiss the LDR filed several months later. The Court will deny both motions for reasons set forth in this opinion.

## Factual Background

On December 15, 1998, Orion bought a refinery and related assets located in St. Charles Parish, Louisiana from TARC. In connection with the acquisition, Orion also assumed a number of TARC's liabilities. Before then, TARC had entered into a number of enterprise zone contracts with the State of Louisiana, Department of Economic Development, Board of Commerce and Industry.[1] Orion claims TARC assigned those enterprise zone contracts to it as part of the December 1998 refinery purchase.

TARC filed chapter 11 in the United States Bankruptcy Court for the District of Delaware in April 1999. Its case and two related cases were transferred to the United States Bankruptcy Court for the Southern District of Texas and consolidated. LDR filed proofs of claim in the TARC case for unpaid taxes, and objected to TARC's plan of reorganization. TARC objected to LDR's claims on the ground that its enterprise zone credits offset the tax liabilities. LDR later withdrew its objection to TARC's plan, and TARC moved to estimate the LDR's claims at $0 for purposes of "voting and

---

[1] The Louisiana Enterprise Zone Act, La. R.S. 51:1781 *et seq.*, was intended to stimulate growth of private business in geographic areas of the state that are economically depressed and in need of business expansion. La. R.S. 51:1782. The Department of Economic Development administers the enterprise zone programs of incentives and inducements. La. R.S. 51:1786. The Enterprise Zone Act allows the Board of Commerce and Industry, after consultation with the Departments of Economic Development and Revenue, to enter into enterprise zone contracts, which can provide for sales and use tax rebates and other tax credits. La. R.S. 51:1787. In particular, section 1787(A)(1) allows the contracts to provide for sales and use tax rebates for purchases of materials used in the construction of, or addition or improvement to, the housing of a business and the machinery and equipment used in the business.

2

confirmation."[2] There was no evidence offered to this Court that TARC's objection to LDR's claims was ever fully adjudicated. The TARC reorganization court apparently never ruled on the issue of ownership of the enterprise zone credits before it closed TARC's case on September 30, 2002.

Orion filed this lawsuit in state court in Baton Rouge, Louisiana in November 2002. At a January 2003 hearing on LDR's exception of lack of subject matter jurisdiction, the state court held that it did have jurisdiction, but stayed the proceedings to give LDR an opportunity to seek any relief available to it in the TARC bankruptcy court.[3] No further action took place in the state court case until Orion removed the lawsuit to federal court on July 14, 2003.

**Sovereign Immunity**

LDR moved to dismiss Orion's complaint for lack of subject matter jurisdiction due to sovereign immunity, and for failure to join TARC, which it alleged was an indispensable party. LDR, an agency of the State of Louisiana, maintains that it cannot be sued in this Court unless Congress has authorized the suit to enforce the Fourteenth Amendment, or the state has waived its sovereign immunity. *See College Savings Bank v. Florida Prepaid Post Secondary Education Expense Board*, 527 U.S. 666, 668, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

---

[2] The parties did not submit to this Court a copy of an order of the TARC bankruptcy court estimating LDR's claims at $0.

[3] An explanation of the delay in bringing these proceedings to this Court is appropriate. The Texas bankruptcy court later reopened the TARC case on LDR's motion, which represented that there was a dispute between Orion and TARC regarding the ownership of the enterprise zone credits. Nonetheless, after the case was reopened, LDR's only action was to move in March 2003 to finalize TARC's objection to LDR's claims, and set off LDR's tax claims against the enterprise zone credits. The Texas bankruptcy court granted LDR's motion in April 2003, but its order was not accompanied by any factual findings or legal conclusions regarding the ownership of the credits.

3

Congress attempted to abrogate sovereign immunity for purposes of the Bankruptcy Code in 11 U.S.C. §106(a). However, after the United States Supreme Court's opinion in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) cast doubt on the constitutionality of section 106(a), the Fifth Circuit specifically held that the statute was unconstitutional. *Matter of Estate of Fernandez*, 123 F.3d 241 (5th Cir. 1997).

However, in contrast to section 106(a), Bankruptcy Code sections 106(b) and (c)[4] have not been declared unconstitutional by either the Supreme Court or the Fifth Circuit. In fact, in *Fernandez*, the Fifth Circuit stated that "[w]e do not doubt that after *Seminole Tribe*, a State may voluntarily choose to participate in a bankruptcy proceeding and waive its Eleventh Amendment sovereign immunity." *Fernandez*, 123 F.3d at 245.[5] To assist in making determinations under §106(b), bankruptcy courts have adopted the definition of *compulsory counterclaim* contained in Federal Rule of Civil Procedure Rule 13(a), made applicable in bankruptcy courts by Fed. R. Bankr. P. 7013(a). *See WJM, Inc. v.*

---

[4]  Sections 106(b) and (c) of the Bankruptcy Code provide:

> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
>
> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

[5]  Neither the United States Supreme Court nor the Fifth Circuit have considered the issue of the scope of a waiver that results from the state's filing of a proof of claim. However, the courts that have addressed the question hold that when a state files a proof of claim in a bankruptcy, its waives sovereign immunity as to the transaction or occurrence giving rise to the claim, at least to the extent of the amount of the state's claim. *See, e.g., Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 27-29 (1st Cir. 2001); *In re Creative Goldsmiths*, 119 F.3d 1140, 1148 (4th Cir. 1997); *In re Lazar*, 237 F.3d 967, 978 (9th Cir. 2001); *In re Straight*, 143 F.3d 1387, 1392 (10th Cir. 1998).

*Massachusetts Department of Welfare*, 840 F.2d 996, 1005 (1st Cir. 1988); *U. S. v. Pullman Constr. Industries, Inc.*, 153 B.R. 539, 541 (N.D. Ill. 1993); *In re Lazar*, 200 B.R. 358, 378 (Bankr. C.D. Cal. 1996).[6]

> In deciding whether a counterclaim is compulsory, courts should inquire:
>
> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

*Tank Insulation International, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85-6 (5th Cir. 1997) (citations omitted). If the answer to *any* of these inquiries is in the affirmative, the counterclaim is compulsory. *Id*. at 86. The Fifth Circuit also has noted that the logical relationship test is the most desirable test for the compulsory nature of a counterclaim. *Plant v. Baker Financial Services, Inc. of Georgia*, 598 F.2d 1357, 1361 (5th Cir. 1979). A logical relationship exists when the counterclaim arises from the same "aggregate of operative facts" as the original claim. *Id.*, quoting *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 715 (5th Cir. 1970).

The logical relationship test favors a finding of a waiver of sovereign immunity if the governmental unit files a proof of claim in the bankruptcy case; the claim of the debtor is against that same governmental unit; and the claim relates to a debt of the same nature. *See, e.g., In re R & W Enterprises*, 181 B.R. 624, 639 (Bankr. N.D. Fla. 1994).

---

[6] Rule 13(a) provides in part that a claim is a compulsory counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . ." Fed. R. Civ. P. 13(a).

5

LDR's proof of claim in the Orion bankruptcy is for sales taxes for periods from December 1998 through March 2002; corporate income tax for July 2002; and corporate franchise tax for July 2003.  In this lawsuit, Orion seeks a declaration of its ownership of the enterprise zone credits – or sales tax rebates – resulting from enterprise zone contracts TARC allegedly assigned to Orion in December 1998.  Should this Court determine that Orion is entitled to the rebates, they will be available to offset LDR's tax claims in Orion's case.  Therefore, even though Orion may not have purchased the contracts and become entitled to the resulting rebates when the taxes that are the subject of the LDR's proofs of claim in the Orion case first became due, a logical connection exists between the taxes and Orion's claim to the rebates.

In fact, the documents LDR submitted in support of the Motion to Dismiss themselves confirm that LDR recognized a relationship between the sales taxes owed by TARC and the enterprise zone credits.  LDR specifically moved the Texas bankruptcy court to offset the credits against TARC's tax liabilities.[7]  LDR itself concedes the interrelationship of the credits and tax claims in acknowledging that the procedure for verifying a claim for enterprise zone credits based on enterprise zone contracts involves supplying supporting documentation to the LDR audit office.  (Memorandum in Response to Orion Refining Corporation's Memorandum in Opposition to the Revenue Department's Motion to Dismiss, p.6-7).  Thus, the LDR handles both sales tax determinations and the sales and use tax rebates stemming from enterprise zone contracts.

---

[7]  LDR here argues that the claims and credits are for different periods, and therefore are not logically related for purposes of the Court's analysis.  However, the timing of the tax claims and the enterprise zone credits did not coincide precisely in the TARC case either.  LDR's proofs of claim against TARC were for taxes due from 1995 to 1999.  The credits apparently dated back to 1993.

6

Therefore, the Court concludes that LDR's tax claims against Orion, and Orion's claim that it is entitled to tax rebates from the enterprise zone contracts, both arise out of the same "aggregate of operative facts" surrounding the transfer of the contracts from TARC to Orion, and LDR's subsequent actions. A logical relationship exists between the LDR proofs of claim and Orion's suit against LDR for recognition of the enterprise zone rebates. The Court also concludes, then, that Orion's claims against LDR arose out the same transaction or occurrence as the claims represented by the proofs of claim LDR filed in Orion's bankruptcy case. Accordingly, by filing its proofs of claim against Orion, LDR waived sovereign immunity pursuant to 11 U.S.C. §106(b) regarding the claims in this lawsuit.

This brings the Court to the issue of waiver under §106(c), which allows setoff of a claim of the estate against the claim of a governmental unit, notwithstanding sovereign immunity. The Second Circuit recently held that the Eleventh Amendment permits courts to construe a state's proof of claim as a waiver of sovereign immunity even as to a permissive counterclaim against a governmental unit different from the one filing the proof of claim, as long as the counterclaim is limited to setoff. *In re Charter Oak Associates*, 361 F.3d 760, 768 - 9 ($2^d$ Cir. 2004). Under §106(c), the debts or credits to be offset need not have arisen from the same transaction or occurrence as the governmental unit's claim. *In re Microage Corporation,* 288 B.R. 842, 852 (Bankr. D. Ariz. 2003), citing  2 COLLIER ON BANKRUPTCY, ¶106.07[2][a], p. 106-39 (15th ed. rev. 2004). However, affirmative recovery is not available under §106(c), and setoff is permitted only to the extent of the governmental unit's claim. *Id*. *See also* ¶106.07[2][b], p. 106-39-41.

7

There is authority, some of it predating the Bankruptcy Code, that a bankruptcy court can adjudicate all issues involving a governmental claim and the defenses or counterclaims to that claim, once a state has waived sovereign immunity by filing a proof of claim.  *See In re Gibson*, 176 B.R. 910, 913 (Bankr. D. Or. 1994); *Microage*, 288 B.R. at 854 (recognizing that waiver in the context of 11 U.S.C. §106 has "consistently been applied to mean the bankruptcy court may litigate all issues surrounding the claim").  *See also*, *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (Bankruptcy Act case) (holding that a state waives any immunity it may have possessed regarding adjudication of a claim when it files a claim against a bankrupt).

If the Court concludes that Orion is entitled to the enterprise zone credits, those credits could offset LDR's tax claims.  In contrast to analysis under §106(b), for purposes of applying 11 U.S.C. §106(c), that the tax periods do not coincide is irrelevant.  The original claim and the claim to be offset need not have arisen from the same transaction or occurrence to result in a waiver under 11 U.S.C. §106(c).  Thus, if LDR's immunity is waived to the extent of allowing this Court to determine the propriety of an offset, the Court also may adjudicate the validity of Orion's claim to the enterprise zone credits, as long as any resulting offset does not exceed LDR's claims.  Accordingly, even if LDR's filing of its proof of claim in the Orion case did not waive sovereign immunity for all purposes under §106(b), LDR has waived sovereign immunity pursuant to §106(c) for the purposes of establishing Orion's potential setoff.

## Indispensable Party

LDR also moved to dismiss on the ground that TARC is an indispensable party. Under Rule 19, determining whether an absent party's presence is necessary for the Court

to grant complete relief involves a two-step analysis. The first step involves deciding whether the person should be joined. Rule 19(a) of the Federal Rules of Civil Procedure (made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7019(a)) requires joinder of a person who is subject to service of process and whose joinder will not adversely affect subject matter jurisdiction if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of a claimed interest.

Once a person is found to be necessary for a just adjudication of the matter, if the person cannot be joined, Rule 19(b) requires that a court "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed . . . ." Rule 19(b) requires consideration of:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The question of whether joinder of an indispensable party is necessary "must be weighed on a case-by-case basis and is left to the discretion of the court." *In re Bell & Beckwith,* 54 B.R. 303,306 (Bankr. N.D. Ohio 1985).

Orion asks this Court to declare it owner of the tax credits arising out of the enterprise zone contracts it says it bought from TARC, and to allow it to use the credits. LDR is the only party that currently disputes Orion's ownership. TARC in its own

9

bankruptcy case apparently already has received the relief it sought concerning its tax liabilities and the credits to be offset. The Texas bankruptcy court's April 7, 2003 order granting LDR's motion to finalize apparently sustained TARC's objection to LDR's claims, and – correctly or not - allowed the enterprise zone credits to offset those claims. That order is final, not appealable and may not be attacked in this proceeding.

The Court can decide whether Orion owns and can use the tax credits even if TARC is not a party to this proceeding. The relevant evidence is available whether TARC is party or not.[8] Representatives of TARC who may have knowledge of facts relevant to the claims between Orion and the LDR can be subpoenaed, along with necessary documents.

LDR's true concern regarding TARC's absence from this case apparently is that it risks being required to offset the credits a second time in Orion's bankruptcy case, after already having done so in TARC's case, should the Court conclude that Orion owned the enterprise zone credits. TARC's joinder as a party in this case will not remedy that problem. The TARC bankruptcy court sustained TARC's objections to LDR's claims and apparently allowed the enterprise credit offsets *without* actually determining who owned the credits. LDR created its own problem by moving the TARC bankruptcy court to allow TARC to offset the credits, even though Orion's lawsuit – filed before LDR filed its motion to reopen the TARC case for relief - claimed them.

The Court will not speculate whether LDR assumed that the April 7, 2003 order would affect Orion's ownership claims, because that issue is not before the Court on these

---

[8] Indeed, TARC as a business entity apparently no longer exists. Its plan provided for TARC's dissolution on the effective date of the plan.

motions.[9]  In any event, no court specifically has determined the ownership of the enterprise zone credits, so whatever determination this Court makes will not be inconsistent with a prior ruling.

TARC is not a necessary party under Rule 19(a), and therefore the Court need not proceed to an analysis under Rule 19(b).

### Abstention and Remand

Alternatively, LDR asks the Court to abstain from hearing this case, and to remand it to state court.

Mandatory abstention is governed by 28 U.S.C. §1334(c)(2).  That statute requires abstention when (1) the action is based on a state law cause of action that, although related to a case under title 11, does not arise under title 11 or arise in a case under title 11; (2) there is no separate basis for federal jurisdiction apart from bankruptcy jurisdiction; (3) an action has already commenced in the state court; and (4) the action could be timely adjudicated in the state court.  *In re Talon Holdings, Inc.*, 221 B.R. 214, 220 (Bankr. N.D. Ill. 1998).  If the action in question is a core proceeding under 28 U.S.C. §157(b)(2), or even arguably a core proceeding, then mandatory abstention is inappropriate.  *Williams v. Heller Financial, Inc.*, 82 B.R. 823, 825 (E.D. La. 1988).

This action is a core proceeding under §157(b)(2)(A), (M) and (O) because it concerns the administration of Orion's estate, affects Orion's use of what it claims is estate property (the credits) and affects the liquidation of Orion's estate and the adjustment of the debtor-creditor relationship.  Moreover, by filing a proof of claim, LDR became subject to the Court's core jurisdiction, even though the claim may relate to a pre-

---

[9] In any event, it is not clear that a decision in the TARC bankruptcy could have preclusive effect on Orion's claims if Orion was not a party to the contested matter between LDR and TARC concerning the LDR's proofs of claim and TARC's offsets.

11

petition contract under state law.  *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2$^d$ Cir. 1995).  *See also In re Efficient Solutions, Inc.*, 2000 WL 1876356 (E.D. La. 2000).  Mandatory abstention is not applicable because the case is a core proceeding arising under title 11.

The analysis regarding the propriety of discretionary abstention under 28 U.S.C. §1334(c)(1) and for remand are identical.  Remand of a civil action removed based on federal bankruptcy jurisdiction is governed by 28 U.S.C. §1452(b).  Courts consider several factors in determining whether to remand a removed civil action:

> (1) forum non conveniens; (2) if the civil action was bifurcated, the entire action should be tried in the same court; (3) a state court is better able to respond to state law questions; (4) the expertise of a particular court; (5) the duplicative or wasteful use of judicial resources; (6) the prejudice to the involuntarily removed party; (7) comity issues; and (8) a diminished likelihood of inconsistent results.

*In re Sun Drilling Pools*, 99-3490, 2000 WL 461687, at *2 (E.D. La. April 19, 2000), citing *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984).  LDR as the moving party bears the burden of proving that remand is appropriate.  *In re Talon Holdings, Inc.*, 221 B.R. 214, 219 (Bankr. N.D. Ill. 1998).

The enumerated factors do not support discretionary abstention or remand.

First, forum non conveniens plays no role in this case because both possible venues are in the same city, and evidence and witnesses are equally accessible.  Considerations relating to bifurcation also are inapplicable.  The third factor is whether a state court is better able to respond to state law questions.  Although ownership of the contracts and credits in question will be resolved by resort to the Louisiana law of obligations and taxes, the mere existence of those state law issues alone does not mandate abstention or remand.  *In re Charter Co.*, 82 B.R. 602, 603 (Bankr. M.D. Fla. 1988).  *See*

12

*also In re Cemetery Development Corp.*, 59 B.R. 115, 127 (Bankr. M.D. La. 1986) (noting that if abstention depended solely on the application of state law, bankruptcy courts would be compelled to abstain in some core proceedings, such as avoiding a transfer based on a state fraudulent conveyance statute). To justify abstention or remand, the state law issues must involve substantial public policy or an area of novel or unsettled state law. *Charter*, 82 B.R. at 604. Although LDR no doubt will contend that the ownership of the enterprise zone tax credits is a public policy issue, evaluating the entitlement to those credits is simply a matter of applying straightforward principles of Louisiana contract and tax law.

A case removed in its early stages typically does not pose the problems of duplicative or wasteful use of judicial resources, comity issues and likelihood of inconsistent results. *Talon Holdings*, 221 B.R. at 220. The *Talon* court's reasoning applies to this lawsuit. Before Orion removed this suit, little had transpired in state court. Orion had served written discovery, to which LDR had filed a blanket objection. LDR excepted based on lack of subject matter jurisdiction, but the state court denied the exception and stayed the action to permit LDR to seek relief in TARC's bankruptcy. Nothing further took place in the case from January 2003 until it was removed in July 2003. Accordingly, the state court likely did not invest an inordinate amount of effort on the case and issued no rulings that would be inconsistent with rulings of this Court or offend notions of comity.

Finally, the Court must consider whether LDR, the party removed involuntarily, is prejudiced. This factor is not a consideration where, as here, the only party removed involuntarily is seeking remand. *Baxter Health Care Corp. v. Hemex Liquidation Trust*,

13

132 B.R. 863, 868 n.6 (N.D.Ill. 1991). LDR will not be prejudiced if the Court retains the case for adjudication.

In summary, none of the relevant factors favor discretionary abstention or remand. The Court therefore will deny LDR's motion to abstain and remand.

## Conclusion

LDR has waived its sovereign immunity under either or both 11 U.S.C. §106(b) or (c). The Court also concludes that TARC is not a necessary party under Fed. R. Civ. P. 19. Therefore, the Court will deny LDR's Motion to Dismiss. Further, the Court holds that no grounds exist for abstention and remand in this case and will deny LDR's Motion to Abstain and Remand.

Baton Rouge, Louisiana, May 28, 2004.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE