UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **ORION REFINING CORPORATION** | **03-11483** |
| | **(USBC DIST. OF DEL.)** |
| DEBTOR | |
| **ORION REFINING CORPORATION** | ADVERSARY NO. |
| PLAINTIFF | **03-1119** |
| V. | |
| **DEPARTMENT OF REVENUE, STATE OF LOUISIANA, BY AND THROUGH CYNTHIA BRIDGES, IN HER CAPACITY AS SECRETARY** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Plaintiff Orion Refining Corporation ("Orion")[1] seeks summary judgment on its

complaint for a declaration that it owns Louisiana state tax rebates totaling $3,331,342.

The tax rebates were payable under enterprise zone contracts[2] 940070 and 940071, which

Orion acquired from TransAmerican Refining Corporation ("TARC") in December 1998.

---

[1]  Orion Refining Corporation filed chapter 11 in the United States Bankruptcy Court for the District of Delaware on May 13, 2003.  Pursuant to Orion's plan of reorganization, ORC Distribution Trust succeeded to the debtor's claims.  Cypress Associates, L.L.C., is the representative of the distribution trust.  Despite these changes, this opinion refers to the plaintiff as Orion for the sake of simplicity.

[2]  The Louisiana Enterprise Zone Act, La. R.S. 51:1781 *et seq.*, was intended to stimulate growth of private business in geographic areas of the state that are economically depressed and in need of business expansion.  La. R.S. 51:1782.  The Department of Economic Development administers the enterprise zone programs of incentives and inducements.  La. R.S. 51:1786.  The Enterprise Zone Act allows the Board of Commerce and Industry, after consultation with the Departments of Economic Development and Revenue, to enter into enterprise zone contracts, which can provide for sales and use tax rebates and other tax credits.  La. R.S. 51:1787.  In particular, section 1787(A)(1) allows the contracts to provide for sales and use tax rebates for purchases of materials used in the construction of, or addition or improvement to, the housing of a business and the machinery and equipment used in the business.

Orion also sought damages equal to the amount of the rebates from defendant Louisiana Department of Revenue ("LDR").[3]

LDR filed a cross motion for summary judgment seeking a ruling that TARC had assigned the state tax rebates at issue to LDR in November 1998 to satisfy TARC's corporate income, franchise and sales tax liabilities, and that as a result Orion now has no claim to the rebates. Alternatively, LDR asked for a declaration that Orion is liable to LDR for TARC's unpaid taxes because it is TARC's successor.

The parties contend that no material facts are disputed, and that this matter is ripe for summary judgment.

## FACTS

LDR and TARC entered into a November 12, 1998 letter agreement ("Letter Agreement") concerning TARC's application for an extension of time to file corporate income and franchise tax returns due November 16, 1998. The Letter Agreement provided in part that:

1)    TARC will file its Corporation Income and Franchise tax extension and estimate of tax due in a timely manner.

2)    *TARC does hereby authorize and instruct the Department of Re-venue to apply all refunds due it under its sales tax and enterprise zone audits presently in progress up to the amount of the Corporation Income and Franchise tax determined to be due.*

3)    The Department of Revenue will accept the Corporation Income and Fran-chise tax extension without funds being deposited.

4)    The Department of Revenue will apply refunds due TARC as determined by the audits presently being conducted by the Department. TARC will not be subject to penalties or interest unless the funds available from

---

[3]  In its May 28, 2004 Memorandum Opinion, the Court concluded that LDR had waived its sovereign immunity pursuant to 11 U.S.C. §106(b) by filing proofs of claim in Orion's bankruptcy. LDR filed proofs of claim in the Orion case for sales taxes from December 1998 through March 2002, corporate income taxes for July 2002 and corporate franchise tax for July 2003.

refund request are not sufficient to satisfy TARC's Corporation Income and Franchise tax estimated liability.  In that event, interest and penalties will be due only on the amount of the shortage.

(Emphasis added.)  The November 12, 1998 Letter Agreement contains no language authorizing LDR to apply the enterprise zone rebates to offset TARC's *sales* tax liability.

Though TARC had included an estimate of its corporate income and franchise taxes in its November 16, 1998 application for extension to the returns, TARC did not actually file its corporate income tax return for 1997 and corporate franchise tax return for 1998[4] until June 11, 1999.

The event that complicated matters, and led to this dispute, was TARC's subsequent transfer of assets, including the enterprise zone credits, through a series of transactions that culminated in Orion's ownership of the assets.  Specifically, on or about December 15, 1998, TARC and TCR Holding Corporation ("TCR") entered into a transaction through which TCR acquired "all of TARC's rights, title and interest in, to and under the Assets and Properties of TARC . . . as the same shall exist on the Closing Date . . . ."[5]  On the same date, in a separate transaction, Transcontinental Refining Corporation ("Transcontinental" – which later changed its name to Orion) acquired the same rights to the assets of TCR.[6]

Schedule H to the Asset Transfer Agreement between TARC and TCR specifically states that TARC's enterprise zone contracts numbered 890099, 940069, 940070, 940071 and 940072 were being assumed by TCR.  TCR in turn transferred the

---

[4]  The Louisiana Department of Revenue combines a corporation's income tax and franchise tax returns for two different years in a single document, form CIFT-620.

[5]  Article 1, Asset and Transfer Agreement between TARC and TCR, Exhibit 1 to Orion's Motion for Summary Judgment.

[6]  Article 1, Asset and Transfer Agreement between TCR and Transcontinental, Exhibit 2 to Orion's Motion for Summary Judgment.

contracts to Transcontinental (later known as Orion).  Neither Asset Transfer Agreement contained provisions suggesting that either TCR or Transcontinental (later, Orion) had voluntarily assumed any of TARC's tax liabilities.[7]

On January 11, 1999, Orion applied to the Louisiana Board of Commerce and Industry for approval of TARC's transfer of the specified enterprise zone contracts to Orion.  The board approved Orion's application on February 24, 1999 and notified Orion of the approval in a March 11, 1999 letter to Orion's tax consultant.  A copy of the board's letter also was sent to LDR, which received it the next day, March 12, 1999.

On April 20, 1999, TARC filed a chapter 11 case in the United States Bankruptcy Court for the District of Delaware.[8]  One week later, on April 27, 1999 LDR notified TARC that an audit revealed that TARC was entitled to an enterprise zone rebate of $3,047,392.45.  Although LDR had been notified previously of TARC's transfer of the enterprise zone contracts to Orion, an LDR revenue audit reviewer sent TARC the rebate check on June 11, 1999.  TARC's senior tax accountant returned the check with a cover letter to the LDR revenue audit manager asking LDR to apply the rebates to TARC's tax liabilities, including its sales tax liabilities.

LDR apparently did not comply with TARC's request before the chapter 11 was filed, because the department's proofs of claim in the TARC reorganization sought

---

[7]  In fact, paragraph 2.10 of the Asset Transfer Agreement between TARC and TCR states that "TARC . . . has filed (or will file) all tax returns required to be filed by applicable law on or prior to Closing Date. . . . TARC has paid (and as to Tax Returns not filed as of the date hereof, will pay) all Taxes that are due, or claimed  or asserted by any taxing authority to be due for the periods covered by the Tax Returns or (ii) has duly provided reserves adequate to pay all Taxes . . . ."  Paragraph 5.01 of the Agreement defines "Tax" to include state income, franchise, sales and use taxes.  Furthermore, at paragraph 4.03 of the Agreement, TARC indemnified TCR after the closing date against any claims "arising out of or relating to all Taxes imposed on TARC . . . ."  The Asset Transfer Agreement between TCR and Transcontinental (later, Orion) contains an identical indemnification of Transcontinental by TCR in paragraph 3.03.

[8]  The case was later transferred to the United States Bankruptcy Court for the Southern District of Texas.

payment of unpaid sales, corporate franchise and hazardous waste taxes for the period from 1995 through 1999.[9]

Another tax rebate under contract 940070, in the amount of $406,313.04 and for the tax period from March 1998 through August 1998, apparently was allowable as of October 5, 1999, as evidenced by a letter on that date from a TARC tax accountant to an LDR sales tax section employee.  However, neither party offered any proof that LDR had issued TARC a check for that amount.

Finally, on February 2, 2001, LDR sent TARC yet another rebate check (on contract 940070) for $149,363.49.  Orion eventually received that check.

These facts indicate that despite LDR's assertions to the contrary, the enterprise zone rebates had not been applied to reduce or eliminate TARC's tax liabilities as of the November 12, 1998 Letter Agreement, or at any time thereafter.

## ANALYSIS

LDR argues that the Letter Agreement assigned TARC's enterprise zone rebates to LDR in payment for the corporate and franchise taxes due *before* TARC transferred the enterprise zone contracts to Orion on December 15, 1998.  As a result, LDR reasons that the rebates do not belong to Orion because they were used to offset TARC's tax liabilities.  The LDR is incorrect for several reasons.

I.    No Evidence Demonstrates that TARC Assigned the Rebates to LDR.

Nothing in the Letter Agreement suggests that either TARC or LDR intended that the agreement act as assignment of the tax rebates to LDR.  Additionally, even if the Court were to construe the Letter Agreement as an assignment, LDR offered no evidence

---

[9] TARC objected to LDR's proofs of claim.  However, the Court in its May 28, 2004 Memorandum Opinion noted that the record of TARC's bankruptcy case does not indicate that the objection was ever fully adjudicated.

to suggest that the department or TARC followed the procedures for transferring rebates, which are set out in article VII of the enterprise zone contracts.[10]

## II. Conditions for the Set off of the Obligations were not Fulfilled before TARC Transferred the Enterprise Zone Contracts to Orion

Second, Louisiana law recognizes that obligations may be conditional. Pursuant to Louisiana Civil Code article 1767, an obligation is conditional if it depends on an uncertain event. If the obligation cannot be enforced until the event occurs, the condition is suspensive. *Id.* Although fulfillment of the condition can have retroactive effect, fulfillment of the condition "does not impair the right acquired by third persons while the condition was pending." La. Civ. Code art. 1775.

The Letter Agreement contains two suspensive conditions. Specifically, the offset of the rebates against the tax liabilities of TARC was conditioned upon (1) LDR's determination of the rebates pursuant to audits *and* (2) TARC's determination of its corporate and franchise tax liability. Neither of these determinations took place before December 15, 1998, the date on which TARC transferred the enterprise zone contracts -- and thus the rebates -- to Orion. Therefore, under Civil Code article 1775, the fulfillment of the suspensive conditions in the Letter Agreement did not affect the right to the rebates Orion had acquired before the date of the tax and rebate determinations. *See Energy Development Corp. v. St. Martin*, 128 F. Supp. 2d 368, 381 (E.D. La. 2000) (a conditional future obligation in a conveyance of mineral rights did not preclude

---

[10] *See e.g.*, May 7, 1996 Enterprise Zone Contract No. 940071, between the State of Louisiana Office of Commerce and Industry and TARC, Exhibit 3 to Orion's Motion for Summary Judgment. Article VII of the contract states, in part, that "in the event the Contractee should sell, or otherwise dispose of the business covered by this Contract, the purchaser of the said business may, within ninety (90) days of the date of such sale, apply to the Board for a transfer of this Contract and *any unused tax credits*." (Emphasis added.) In contrast, the board specifically approved TARC's transfer of the contracts to Orion.

subsequent conveyance of contiguous mineral servitude unburdened by the conditional obligation).

III.  No Offset Took Place before the Transfer of the Enterprise Zone Contracts.

The third reason that LDR's argument fails is that the obligations of the parties (i.e., Orion's liability for taxes and LDR's liability for the Enterprise Zone Credits) were not offset.  Compensation – the Civil Law analog of set off – takes place by operation of law "when two persons owe each other sums of money . . . and those sums are *liquidated and presently due*."  La. Civil Code art. 1893 (emphasis added).  Liquidation of claims is a prerequisite for compensation.  *ITT Residential Capital Corp. v. Cheuk*, 656 So.2d 747, 751 (La. App. 5th Cir. 1995) (citation omitted); *West v. West*, 438 So.2d 706, 708 (La. App. 2d Cir. 1983).

Neither TARC's tax liabilities nor the enterprise zone credit rebates were liquidated before the date of the Asset Transfer Agreements.  TARC's tax liabilities were not liquidated until June 11, 1999, the date TARC actually filed its returns.[11]  Moreover, the enterprise zone rebates were not liquidated until LDR had completed its audit of TARC, the Secretary of Revenue received notice of the rebate amount from the audit review division and approved it on or about April 27, 1999.  Accordingly, the rebates owed to TARC and the tax liabilities owed to LDR were not compensated, or set off, by operation of law before the contracts and rebates were transferred to Orion.

Even where compensation does not occur as a mater of law (for example, when one of the debts is unliquidated or is not presently due), compensation nevertheless may occur if the parties agree to remove the obstacle to compensation.  La. Civil Code art.

---

[11]  TARC had received an extension through June 15, 1999 to file its returns.

1901; *Keene v. Reggie*, 701 So.2d 720, 725 (La. App. 3[d] Cir. 1997).  However, LDR offered no evidence to suggest that it had an agreement with TARC to forego the requirement that both the rebates and the tax liabilities be liquidated before LDR could apply the rebates to reduce TARC's tax obligation.

The November 12, 1998 Letter Agreement did not result in an offset of TARC's rebates against its tax liabilities for two other reasons.  First, Louisiana Civil Code article 1900 provides that "an obligor who has consented to an assignment of the credit by the obligee to a third party may not claim against the latter any compensation that otherwise he could have claimed against the former."  LDR received notice in March 1999 that the Board of Commerce had approved TARC's assignment of its enterprise zone contracts (and, therefore, the rebates) to Orion.  Accordingly, given its failure to challenge or object to the assignment, LDR now cannot claim against Orion the compensation between the rebates and the tax liabilities that it could have claimed against TARC.  *See In re MMR Holding Corp.*, 199 B.R. 611, 614-15 (M.D. La. 1996) (obligor on debt assigned by chapter 11 debtor to third party was not entitled to use compensation theory to offset against assignee funds that obligor advanced to debtor, where obligor had notice of assignment of the debt when the obligor's claim against the debtor became determinable).

Next, under Louisiana law, "a debt to the State for taxes cannot be compensated." *State v. Weaver*, 55 So.2d 279, 280 (La. App. 2[d] Cir. 1951) (recognizing as settled the proposition that, because taxes are not debts in the "ordinary definition of the term but contributions by the citizens for the support of their government, they are not subject to … compensation.")

The most obvious problem with LDR's argument that TARC's tax liability was offset against the rebates before the transfer to Orion is the undisputed evidence that LDR filed proofs of claim in TARC's bankruptcy.  After LDR sent TARC the rebate check in June 1999, LDR filed three proofs of claim in the TARC reorganization.  Those claims sought payment of much of the same tax debt that LDR argues it was entitled to set off based on the November 12, 1998 Letter Agreement.  Accordingly, as of the date the claims were filed, LDR apparently still regarded TARC as liable for the sales and franchise taxes.  If the Letter Agreement assigned the rebates to LDR in payment of the taxes due in November 1998, as the department argues, LDR would have had absolutely no ground for filing proofs of claim in the TARC bankruptcy.  The evidence underscores that compensation did not take place -- by operation of law or otherwise -- before the enterprise zone credits were transferred to Orion in December 1998.

IV.    Orion is Not Liable for Taxes as TARC's Successor.

Finally, LDR argues in the alternative that Orion is TARC's successor, and therefore is liable for TARC's tax debt.

As a matter of Louisiana law, in the absence of an agreement to assume liabilities, an entity purchasing another entity's assets is liable as the transferor's successor only in limited circumstances.  *See Industrial Sales & Service, Inc. v. Security Plumbing, Inc.*, 666 So.2d 1165 (La. App. 5th Cir. 1995); *Leblanc v. Adams*, 510 So.2d 678 (La. App. 4th Cir. 1987).  Successor liability will be imposed only when the party demanding it proves that a transaction in which one entity acquires assets from another was undertaken to defraud the seller's creditors, or when the facts demonstrate that the entity buying the assets was merely a continuation of the entity selling the assets, or when the purchase of

all the stock of one corporation from the stockholders of another corporation creates a merger of the two corporations. *Industrial Sales*, 666 So.2d at 1166-67; *Leblanc*, 510 So.2d at 682-3; *Travis-Edwards, Inc. v. Texas-Edwards, Inc.*, 299 So.2d 389, 392-3 (La. App. 2d Cir. 1974).

LDR has not proven facts necessary to establish Orion's liability as TARC's successor. The department's argument that some individuals served as officers of both TARC and Orion during the transitional period after the asset transfers alone is not sufficient to impose successor liability on Orion. Glenn Berkman, TARC's tax director, testified in his deposition that the transactions between TARC and TCR, and then TCR and Transcontinental (later, Orion) were not stock sales, but only asset transfers. Moreover, TARC and Orion maintained separate corporate identities both before and after the asset transfer, as evidenced by TARC's bankruptcy filing in April 1999. LDR also has not demonstrated that the asset transfers were undertaken to defraud TARC's creditors. Accordingly, LDR has not met its burden of proving that Orion is liable as TARC's successor. *See Leblanc*, *supra*, 510 So.2d at 682.

At the hearing on LDR's motion for summary judgment, counsel for the department also urged for the first time that Orion is liable for TARC's taxes pursuant to La. R.S. 47:308.[12] LDR never asserted this theory of recovery in any of its earlier filings in the case, or at the hearing on Orion's motion for summary judgment. Counsel for

---

[12] La. R.S. 47:308 states, in relevant part, that a "if any dealer liable for any tax levied [under La. R.S. 47:301 *et seq.*] sells his business or stock of goods or quits the business, he shall make a final tax return and payment within fifteen days of selling or quitting the business. His successor . . . , if any shall withhold sufficient of the purchase money to cover the amount of such taxes … due and unpaid until such time as the former owner shall produce a receipt from the secretary showing that they have been paid, or a certificate stating that no taxes … are due. If the purchaser of a business or stock of goods fails to withhold purchase money as above provided, he shall be personally liable for the payment of the taxes . . . accrued and unpaid . . . ."

Orion declined the opportunity to submit additional briefs on this issue, although the applicability of the statute on the facts is far from clear.

Section 308 of title 47 applies when a "dealer" as defined in the statute "sells his business or stock of goods or quits the business," and fails to pay taxes due. The liability for the taxes may then fall upon the purchaser of the business or stock of goods. Assuming (without finding) that TARC is a dealer under La. R.S. 47:308, LDR still has not demonstrated that a termination or transfer of TARC's business took place and triggered the provisions of R.S. 47:308.

TARC did not sell its business to Orion. No sale of any equity interests took place. TARC only transferred assets to TCR Holding Corporation, which later transferred the assets to Orion. The assets transferred to TCR and then to Orion were fixed assets, leases, contracts and accounts -- not a "stock of goods" within the common understanding of that phrase.[13] Further, TARC did not quit its business at the time of the Asset Transfer Agreements. In fact, TARC filed a chapter 11 bankruptcy case in April 1999, which arguably indicates that its business continued to operate then, several months after the Asset Transfer Agreement. LDR has offered no evidence by way of depositions, affidavits or other materials to dispute these facts.

Finally, R.S. 47:308 imposes liability for unpaid taxes only on the "purchaser" of the business or stock of goods from the dealer. In this case, Orion did not purchase any assets from TARC, but rather from TCR. Arguably, if any entity were liable under the statute for TARC's taxes, it would be TCR. Nothing in the statute or cases construing it

[13] The Louisiana Supreme Court, in an old, but oft-quoted, opinion addressing statutory construction and the general and specific meaning of words, defined a "stock of goods" as meaning "articles of movable property which are being held for sale" by a merchant *State v. Fontenot*, 36 So. 630, 639-40 (La. 1904).

11

suggests that a subsequent transferee of the initial transferee is liable for the transferor's tax debt.

LDR has not shown that R.S. 47:308 applies on the facts of this case.

## CONCLUSIONS

There are no genuine issues of material fact regarding the claims of either Motion for Summary Judgment.  As a matter of law:

1) TARC did not assign the enterprise zone rebates to LDR pursuant to the November 12, 1998 Letter Agreement.

2) Suspensive conditions in the Letter Agreement were not fulfilled before TARC transferred the enterprise zone contracts to Orion.  Thus, the application of rebates LDR owed TARC to satisfy TARC's outstanding tax liabilities did not occur before the assets were transferred to Orion.

3) Compensation did not take place between TARC's tax debt to LDR, and the enterprise zone rebates LDR owed to TARC, before TARC transferred the enterprise zone contracts (and the corresponding right to the rebates) to Orion.

4) LDR has no claim against Orion for the TARC tax liabilities because there is no proof that Orion specifically assumed those liabilities in the asset transfer. Moreover, LDR did not prove facts supporting the imposition of successor liability against Orion under either Louisiana jurisprudence or La. R.S. 47:308.

Accordingly, LDR's motion for summary judgment will be denied and Orion's motion for summary judgment will be granted.  Orion is entitled to judgment declaring that enterprise zone rebates in the amounts of $3,074,392.45 (due under contract number

12

940071) and $406,313.04 (due under contract number 940070), less the rebate in the amount of $149,363 that was previously sent to Orion by LDR, belong to Orion and that amount is owed to Orion by LDR.

Orion also seeks interest on the rebate amounts owed pursuant to Louisiana Civil Code art. 2000.[14]  However, La. R.S. 51:1787(A)(1), the Enterprise Zone Act provision authorizing the rebate of sales and use taxes, specifically states that "[t]he amount rebated shall in no case be greater than the total of the actual amount of the sales and use taxes paid."  Orion is entitled to no greater rights under the enterprise zone contracts than TARC.  Therefore, Orion is not entitled to interest on the amount of the rebates awarded to it.

Baton Rouge, Louisiana, April 27, 2005.


**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[14]   Louisiana Civil Code art. 2000 provides that "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due … at the rate of legal interest as fixed by R.S. 9:3500."